595 P.2d 1010

DENNIS DEVELOPMENT CO., INC., an Arizona Corporation, Appellant,

v.

DEPARTMENT OF REVENUE of the State of Arizona, Appellee.

No. 1 CA–CIV 3970.

Court of Appeals of Arizona, Division 1, Department B.

Feb. 8, 1979.

Rehearing Denied April 16, 1979.

Review Denied May 22, 1979.

Bilby, Shoenhair, Warnock & Dolph, P. C. by Daniel A. Nicolini and Lawrence Ollason, Tucson, for appellant.

John A. LaSota, Jr., former Atty. Gen., by Ian A. Macpherson, Asst. Atty. Gen., Phoenix, for appellee.

## OPINION

JACOBSON, Judge.

The sole issue on this appeal is whether a building contractor's liability for transaction privilege taxes includes the value of the land underlying the construction.

The plaintiff-appellant, Dennis Development Company, brought this action against the Department of Revenue (Revenue) seeking a refund of $16,726.79 paid under protest as its liability under Arizona's Transaction Privilege Tax (A.R.S. § 42–1309). On an agreed statement of facts and cross motions for summary judgment, the trial court entered judgment in favor of Revenue and denied the plaintiff's claim for refund. The plaintiff has now appealed.

The agreed statement of facts reveals that plaintiff is a licensed contractor in the state of Arizona and during all times pertinent to this appeal was engaged in building

residential homes for sale. This housing was built either on an individual contract with the ultimate purchaser or upon a speculative basis. All of the construction was done upon real property owned by the plaintiff.

In connection with each individual sale of a home, the contract of sale specifically allocated the purchase price between the real property sold and the constructed residence. However, no attempt was made to sell the lots or improvements independently of each other and plaintiff received the gross income from each sale.

During the audit period of October 1, 1970 through June 30, 1973, Revenue determined that an additional sum of $18,470.91 was due from plaintiff under the Transaction Privilege Tax, Education Excise Tax, and Special Excise Tax for Education. This sum represented the tax liability on $557,-559.58 of "unreported income," together with miscellaneous disallowed adjustments made by the plaintiff. The "unreported income" represents the stipulated fair market value of the land underlying the homes constructed by plaintiff and by stipulation the parties agreed that the sole issue of dispute between the parties centered on the plaintiff's liability for taxes on income generated by the sale of this land. The amount in dispute was stipulated to be the sum of $16,726.79.

It was further stipulated that during the audit period Revenue did not levy any taxes on the sale of homes and lots by developers, speculative buyers or others who did not construct improvements upon the property.

The basis of the tax liability of plaintiff is predicated upon A.R.S. § 42–1309,[1] which provides in part:

"A. There is levied and there shall be collected by the commission . . . privilege taxes measured by the amount or volume of business transacted by persons on account of their business activi-

ties, and in the amounts to be determined by the application of rates against values, gross proceeds of sales, or gross income, as the case may be . . . ."

A.R.S. § 42–1310 provides in part that the tax imposed by § 42–1309 shall be levied and collected on the

"2. . . . gross income from the business upon every person engaging or continuing within this state in the following businesses:

\* \* \* \* \* \*

"(i) Contracting, but payments paid by the contractor for labor employed in construction, improvements or repairs shall not be subject to such tax."

The terms "contracting" and "contractor" are defined in A.R.S. § 42–1301 as follows:

"(2) 'Contracting' means engaging in business as a contractor.

"(3) 'Contractor' is synonymous with the term 'builder' and means a person, firm, partnership, corporation, association or other organization, or combination of any of them, who undertakes to or offers to undertake to, or purports to have the capacity to undertake to, or submits a bid to, or does himself or by or through others, construct, alter, repair, add to, subtract from, improve, move, wreck, or demolish any building, highway, road, railroad, excavation or other structure, project, development or improvement, or to do any part thereof, including the erection of scaffolding or other structure or works in connection therewith, and includes subcontractors and specialty contractors. For all purposes of taxation or deduction, this definition shall govern without regard to whether or not the contractor is acting in fulfillment of a contract."

In 1960, the State Tax Commission duly promulgated regulation 2.15.8 which provided:

---

1. Plaintiff's tax liability was also premised upon A.R.S. § 42–1361 (Education Excise Tax) and A.R.S. § 42–1371(A) (Special Excise Tax for Education). However, the legal premise of the imposition of the tax involved can be dis-

cussed in the context of the Transaction Privilege Tax and no further mention need be made to these additional taxing sections.

Except where otherwise noted, statutes are cited in form effective during the audit period.

*"Other deductions.* Other deductions from gross proceeds or gross income allowed to a contractor are . . . .
Cost of land may not be deducted."

In 1976, the legislature amended A.R.S. § 42–1310 to read:

"(i) Contracting, but <u>the sale price of land which shall not exceed the fair market value and the</u> payments paid by the contractor for labor employed in construction, improvements or repairs shall not be subject to such tax." (Language added by amendment underlined.)

The statutes which are controlling here were first enacted in 1937 and have remained, in material respects, unaltered until the 1976 amendment.

Based upon the stipulated facts and the legislative history, plaintiff urges the following contentions:

(1) That the tax is imposed only upon the business of "contracting" and since the selling of real estate is not taxed, income derived from that source should not be included in computing its tax liability;

(2) That if there is a doubt as to the legislative intent to exclude proceeds from the sale of underlying real property in computing its tax liability, the 1976 amendment removed that doubt and should be construed as a clarification of the previous legislative intent; and

(3) That the imposition of the tax under the circumstances presented here is a denial of equal protection.

Based upon the same facts and legislative history, Revenue's contentions are:

(1) That the legislative history of this act shows a clear legislative intent to include real estate sale proceeds within gross income in computing tax liability;

(2) That since plaintiff is engaged in the business of contracting and since the tax is imposed upon gross proceeds received, exemption from that tax should not be created in absence of specific legislation creating the exemption;

(3) That the effect of the 1976 amendment was to create a specific exemption from gross receipts and should not be given retroactive effect; and

(4) That plaintiff's failure to raise the equal protection argument before the administrative board or the trial court bars appellate consideration.

■ We first deal with Revenue's legislative history/legislative intent argument. Revenue's argument is this: The tax imposing statute was first enacted in 1937; in 1960, Revenue duly adopted a regulation which included the proceeds from the underlying real estate in gross income for contractors for purposes of determining the tax liability; thereafter the legislature on several occasions amended the taxing statute without specifically rejecting Revenue's interpretation of this taxing statute (at least for a period of 16 years), and for a period of 39 years did not provide for a deduction for land costs. Based upon this legislative history and such cases as *Jenney v. Arizona Express, Inc.,* 89 Ariz. 343, 362 P.2d 664 (1961), Revenue argues that the legislature is presumed to know of the construction placed on a statute by the administrative agency required to enforce it and the reenactment of that statute after such knowledge is an adoption by the legislature of the construction taken by the agency.

The problem with this theory is that Revenue admits that prior to 1960, Revenue did not include the proceeds from the sale of the underlying real property in the gross income of contractors in computing their tax liability. Thus, for a period of 23 years (from 1937 to 1960), during which period the legislature on at least three occasions reenacted the same statute, Revenue construed this same statute [2] to not include real estate proceeds in determining tax liabili-

2. Revenue hints that the statutory amendment of 1960 (1960 Ariz. Sess. Laws, Ch. 21, § 1) which broadened the definition of "contractor" provided the statutory authority for its 1960 regulation. Revenue, however, is unable to point to any specific language of that amend-ment which justifies this result. In our opinion, the 1960 amendment broadened the definition of *who* is a contractor, but did not address itself to *what* constitutes the tax liability of a contractor so defined.

ty.[3] Under these circumstances, *Jenney v. Arizona Express, Inc.,* which speaks in terms of "uniform construction" by the administrative agency, is not applicable.

We next turn to the effect of the 1976 amendment (1976 Ariz. Sess. Laws, Ch. 49, § 3) which specifically excluded proceeds from the sale of real property in computing contractors' tax liability.

Plaintiff argues from cases such as *General Petroleum Corp. of California v. Smith,* 62 Ariz. 239, 157 P.2d 356 (1945), that an amendment which construes and clarifies a prior statute should be accepted as the legislative declaration of the original act. On the other hand, Revenue relying on cases such as *Needel v. Needel,* 15 Ariz.App. 471, 489 P.2d 729 (1971), *overruled, Becchelli v. Becchelli,* 109 Ariz. 229, 508 P.2d 59 (1973), argues that where the legislature enacts an amendment to a statute it thereby indicates an intention to change the law by either creating or withdrawing legal rights.

■■■ These canons of legislative construction (and the same is true of "legislative history") are, like Joseph's coat, varied and multicolored, but really only come into operation where an initial determination is made that an ambiguity exists as to the legislative intent in enacting a particular statute. This inquiry starts, at least for taxing statutes, with the presumption that the scope of the tax must be definite and cannot be extended to include subject matter not specifically covered by the language of the statute itself. *Ebasco Services, Inc. v. Arizona State Tax Commission,* 105 Ariz. 94, 459 P.2d 719 (1969); *Moore v. Smotkin,* 79 Ariz. 77, 283 P.2d 1029 (1955).

■■ With this premise in mind and considering that the tax imposed is upon the privilege of engaging in business in this state, *State Tax Commission v. Ranchers Exploration and Development Corp.,* 22 Ariz.App. 480, 528 P.2d 866 (1974), the statute (A.R.S. § 42-1310(2)) imposes the tax upon the "gross income from the *business*" of "contracting." "Contracting" in turn is defined as "engaging in *business* as a contractor." (A.R.S. § 42-1301(2)). We are told by A.R.S. § 42-1301(3) that "contractor" is synonymous with "builder" and the verbs used in the statute to describe the activities of a builder are "construct, alter, repair, add to, subtract from, improve, move, wreck or demolish."

Nowhere does the statute purport to impose transaction privilege taxes on the business of a contractor who "sells" real estate. Moreover, by stipulation, Revenue has admitted that simply the sale of real property is not subject to the tax and at the time of oral argument admitted that even a contractor who sold unimproved real property would not be subject to the tax. All of which, under Revenue's construction of the statute, would lead to the result that where a contractor constructs a house on one acre of a 120 acre parcel and sells the house and entire acreage in one transaction, the entire sale price including the price for 119 acres (even though the contract of sale had a specific price on the unimproved acreage) would be subject to tax liability; but if the same contractor sold the same house and the same acreage separately, the tax liability would only attach to the real property underlying the house. Tax liability should not hang on such artificial distinctions.

Revenue argues, however, that this result is mandated by A.R.S. § 42-1301(5) defining "gross income" to mean "the gross receipts of a taxpayer derived from . . . business . . . ." The argument continues that since it is undisputed that proceeds from the sale of the underlying real property constituted a gross receipt to the taxpayer, of necessity these sums should be subject to tax liability. A similar argument was made by Revenue's predecessor in *Ebasco Services Inc. v. Arizona State Tax Commission, supra,* and rejected. In *Ebasco,* the taxpayer was a contractor and in addition performed engineering and design services, both of these two activities being the subject of distinct contracts with the same party. The court stated, in answer to a

---

**3.** In fact, between 1955 and 1960, Revenue had a specific regulation that excluded proceeds from the sale of real property from gross income. Reg. 2.15.10.

contention that the receipts from both activities should form the basis of tax liability:

"We do not believe that this statute goes so far as to tax all activities of a corporation based on the fact that one of the activities engaged in is that of contracting." *Ebasco Services Inc. v. Arizona State Tax Commission, supra,* 105 Ariz. at 98, 459 P.2d at 723.

Likewise, we see nothing in the taxing statutes which would impose a tax on a seller of real property merely because the seller is also in the business of contracting.

This result is also consistent with A.R.S. § 42–1329, which provides:

"For the purpose of proper administration of this article and to prevent evasion of the tax imposed by this article it shall be presumed that all gross receipts are subject to the tax *until the contrary is established*." (Emphasis added.)

Obviously, this statute contemplates that some "gross receipts" of a contractor, shall not be subject to tax liability.[4]

Here, the contrary was clearly established. The various contracts of sale entered into by plaintiff with purchasers of its constructed homes clearly set forth a selling price for the real property and a selling price for the construction. The parties stipulated that the price listed for the real property was its fair market value at the time of sale. Plaintiff has brought itself within the qualifying language of A.R.S. § 42–1329.

In summary, we do not find the statute to be ambiguous so as to bring into play the sometimes conflicting canons of statutory construction surrounding amendments to a statute. Nor do we view the exclusion of receipts from the sale of real property to be an "exemption" as urged by Revenue. Rather, we view the problem to be one of inclusion—and find the tax liability base of the Transaction Privilege Tax does not include proceeds from the sale of real property, because such proceeds are not the result of any activity listed in the statute as making up the business of contracting.

Based upon this ruling we need not reach plaintiff's equal protection argument or determine whether it is properly before us.

The judgment of the trial court is reversed and the matter remanded with directions to enter judgment for the plaintiff for the stipulated refund.

SCHROEDER, P. J., and OGG, C. J., concur.

---

4. Consistent with *Ebasco,* we do not interpret this statute to apply only to statutory deductions.