669 P.2d 1017

**STATE of Arizona, ex rel., ARIZONA DEPARTMENT OF REVENUE, Plaintiff-Appellee,**

v.

**CHASTAIN BUILDERS, INC., an Arizona corporation, Defendant-Appellant.**

**No. 1 CA–CIV 5842.**

Court of Appeals of Arizona,
Division 1, Department D.

June 9, 1983.

Rehearing Denied July 7, 1983.

Review Denied Sept. 22, 1983.

Robert K. Corbin, Atty. Gen. by Frank L. Migray and Frank T. Galati, Asst. Attys. Gen., Phoenix, for plaintiff-appellee.

Scott & Renneckar by William C. Scott, Tucson, for defendant-appellant.

## OPINION

EUBANK, Judge.

This appeal by Chastain Builders, Inc. (Chastain) is from a summary judgment in favor of the State of Arizona Department of Revenue (State) which reversed a decision of the Arizona State Board of Tax Appeals (Board) in Chastain's favor. The Board's decision rejected the State's deficiency assessment against Chastain for $42,-633.95, which was based on an audit of Chastain for the period of October 1, 1970 through December 31, 1975. The deficiency assessment resulted from disallowing certain deductions claimed by Chastain for payments made to concerns holding both contractor's and sales tax licenses.

---

1. The issues are defined in the opening brief as: 1) Did the court err in considering the alleged "longstanding practice" first referred to in oral argument on cross motions for summary judgment in conducting the "evidentiary hearing" in connection therewith and admitting the parole evidence with reference thereto; and 2) is appellant taxpayer entitled to deduct the payments in the amount of $2,219,583.29 to licensed subcontractors holding transaction privilege tax licenses from its gross income when such subcontrac-

The only material issue on appeal is whether summary judgment was properly granted the State as a matter of law.[1]

The facts are not in dispute. Chastain is an Arizona corporation engaged in the contracting business. Its primary activity consists of building and selling residential homes. Based upon the State's regulation A.C.R.R. R15–5–216(G)(1),[2] Chastain deducted from its gross income amounts paid to "subcontractors" who were licensed as a contractor and who also held a Transaction Privilege Tax license. Rule R15–5–216(G)(1) reads:

G. Other deductions. Other deductions from gross proceeds or gross income allowed to a contractor are:

1. Amounts paid to a subcontractor who is duly licensed as a contractor and also holds a transaction privilege tax license . . . .

It is undisputed that these "subcontractors" performed no construction labor for Chastain but only sold construction materials to Chastain, which were, in turn, used in its contracting business. Thus, at the time of the audit and before this court, Chastain contends that the regulation should be enforced according to its terms and that the deficiency assessment be reversed.

The State justifies the deficiency assessment on the basis of the statutes and rules. It argues that during the audit period A.R.S. § 42–1310 provided, in part:[3]

The tax imposed by subsection A of [A.R.S.] § 42–1309 shall be levied and collected at the following rates:

\* \* \* \* \* \*

2. At an amount equal to one per cent of the gross proceeds of sales of gross

---

tors provided only materials under their contracts?

2. Now A.C.R.R. R15–5–626.

3. The assessment also included taxes levied by the Education Excise Tax (Article 1.1 of Title 42, A.R.S.), and the Special Excise Tax for Education (Article 1.2 of Title 42, A.R.S.). Those taxes, however, both refer back to A.R.S. § 42–1310.

income from the business upon every person engaging or continuing within this state in the following businesses:

\* \* \* \* \* \*

(i) Contracting, but payments paid by the contractor *for labor employed in construction,* improvements or repairs shall not be subject to such tax. (Emphasis added) (this version of subsection (i) was repealed by Laws of 1978, Ch. 97, § 2). The State further notes that the words "contracting," "contractor," and "subcontractor" are specifically defined in A.R.S. § 42–1301 as follows:

2. "Contracting" means engaging in business as a contractor.

3. "Contractor" is synonymous with the term "builder" and means a person, firm, partnership, corporation, association or other organization, or a combination of any of them, who undertakes to or offers to undertake to, or purports to have the capacity to undertake to, or submits a bid to, or does himself or by or through others, construct, alter, repair, add to, subtract from, improve, move, wreck or demolish any building, highway, road, railroad, excavation or other structure, project, development or improvement, or to do any part thereof, including the erection of scaffolding or other structure or works in connection therewith, *and includes subcontractors* and specialty contractors. For all purposes of taxation or deduction, this definition shall govern without regard to whether or not the contractor is acting in fulfillment of a contract. (Emphasis added).[4]

Finally, in addition to A.C.R.R. R15–5–216(G)(1), *supra,* relied on by Chastain, the State contends that subsections (A) and (H) must also be considered. Subsection (A) repeats the definition of "contractor" and "subcontractor" contained in A.R.S. § 42–1301, *supra,* and subsection (H) states:

H. Other costs not deductible. Examples of certain costs not deductible by contractors from gross income or gross proceeds of sales are-cost of land, *materi-*

*als used in contracts,* public liability and property damage insurance, amounts paid to trucking concerns for hauling of dirt or materials. (Emphasis added).

Thus, the State contends that Chastain could only deduct from its gross income its cost for labor employed in its construction, and since the suppliers of materials did not furnish Chastain labor, the suppliers were not within the definition of a "subcontractor" for the purpose of an A.C.R.R. R15–5–216(G)(1), *supra,* deduction. We agree with the State.

In interpreting statutes, we must look to the intent of the legislature. In this process, tax statutes relating to the same subject should be read together and construed as a whole. *Arizona Department of Revenue v. Maricopa County,* 120 Ariz. 533, 587 P.2d 252 (1978). Further, the various provisions of our tax statutes are to be read together and ordinarily construed as a whole. Accordingly, if there were a definition of general application set forth in one provision, it would be given weight as indicating the appropriate definition of the same word or phrase in another provision. *Arizona State Tax Commission v. Staggs Realty Corp.,* 85 Ariz. 294, 297–98, 337 P.2d 281, 284 (1959). Finally, a party claiming a tax exemption must come clearly within the exemption provisions, since such tax exemptions are strictly construed. *J.H. Welsh & Son Construction Co. v. Arizona State Tax Commission,* 4 Ariz.App. 398, 420 P.2d 970 (1966), approved 102 Ariz. 443, 432 P.2d 455 (1967).

First, we note that the legal issue involved herein is one of first impression. We have not been referred to any case authority by either party involving the precise exemption question.

Turning to the law, in our opinion the legislative intent is clearly expressed in the above cited statutes. When A.R.S. § 42–1301 was amended in 1960 to add the definitions of contracting and contractor to the section, the title of Senate Bill No. 116 read:

4. This definition is essentially the same as A.R.S. § 32–1101 prior to amendment in 1977.

Relating To Taxation; providing a definition of Contracting and Contractor for the purposes of taxation and exemption under the Transaction Privilege and Use Taxes, and amending sections 42–1301 and 42–1401, Arizona Revised Statutes. Laws of 1960, Ch. 21, § 1. The definitions of contracting and contractor, set out above, included the legislative purpose indicated in the title by stating: "For all purposes of taxation or deduction, this definition shall govern without regard to whether or not the contractor is acting in fulfillment of a contract." Since the definition of contractor specifically includes a "subcontractor," the same definition applies in order to determine who is a subcontractor for "taxation or deduction" purposes.

■ Chastain does not argue that the suppliers of materials are "subcontractors" within the definition of A.R.S. § 42–1301, *supra,* but only that by virtue of A.C.R.R. R15–5–216(G)(1), *supra,* it was duly licensed as a contractor and also held a transaction privilege tax and was exempted by the rule. This is not enough. In order for an R15–5–216(G)(1) deduction to apply, the subcontractor must come within the definition of contractor in A.R.S. § 42–1301 and must be providing labor to Chastain's projects. Former A.R.S. § 42–1310(2)(i), *supra.* The sale of materials only to the contractor does not qualify for the deduction by definition.

Our conclusion is supported by our prior opinion in *Dennis Development Co. v. Department of Revenue,* 122 Ariz. 465, 595 P.2d 1010 (App.1979). There we reversed the trial court for including within the contractor's tax base proceeds from the sale of real property because such sales were not included within the definition of "contractor" set out in A.R.S. § 42–1301(5). Our conclusion is further supported by *Ebasco Services, Inc. v. Arizona Tax Commission,* 105 Ariz. 94, 459 P.2d 719 (1969), where our Supreme Court held, in part, that· "[t]he proper measure of the tax imposed on the privilege of doing business as a contractor within this state has been established by the legislature to be the GROSS RECEIPTS from that business. Giving a reasonable

and ordinary construction of that term, we hold that owner supplied equipment [to the contractor] is not a gross receipt [of the contractor] for Transaction Privilege and Education Excise taxation." 105 Ariz. at 98, 459 P.2d at 723. This conclusion was reached by the court applying a strict construction of the definition of gross receipts as defined by A.R.S. § 42–1301. Finally, our conclusion is supported by our opinion in *Knoell Brothers Construction, Inc. v. State, Department of Revenue,* 132 Ariz. 169, 644 P.2d 905 (App.1982). There, relying on the definitions of "contractor" and "gross income" contained in A.R.S. § 42–1301, we said:

> Although the *Dennis* case [122 Ariz. 465, 595 P.2d 1010] was interpreting A.R.S. § 42–1310(2)(i) before it was repealed (effective January 1, 1979), the reasoning has application here. The sale of land is not part of the business of contracting as defined under A.R.S. § 42–1301(4). This conclusion is further supported by the definition of "gross income" as set forth in A.R.S. § 42–1301(7), which provides:
>
>> 7. "Gross income" means the gross receipts *of a taxpayer derived from trade, business, commerce or sales* and the value proceeding or accruing from the sale of tangible personal property, or service, or both, and without any deduction on account of losses. (Emphasis added).
>
> It would therefore appear that if a contractor generates income from contracting activities, as those activities are defined in A.R.S. § 42–1301(4), then such income is properly included in the contractor's tax base. Conversely, if monies come to the contractor from sources other than his taxable contracting business activities, they do not constitute gross income for the purpose of calculating the "in lieu of labor" deduction under A.R.S. § 42–1310(2)(i).

132 Ariz. at 171, 644 P.2d at 907.

■ In our opinion A.C.R.R. R15–5–216(G)(1), *supra,* relating to "amounts paid to a subcontractor" means a subcontractor

244

engaged in contracting as defined in A.R.S. § 42–1301, *supra,* and in A.C.R.R. R15–5–216(A). Thus, under the facts here, Chastain's suppliers of construction materials were not subcontractors for the purpose of a deduction under the statutes and rules. Therefore, the deficiency assessment by the State against Chastain was lawful.

Chastain also contends that the trial court erred in admitting an alleged "long-standing practice" regarding its practice to treat the transactions involved herein as resale transactions rather than transactions between contractors and subcontractors. This issue need not be addressed. Assuming for purposes of argument that the court erred, it arrived at the correct legal result.

The summary judgment was properly granted to the State as a matter of law, hence it is affirmed.

HAIRE, P.J., and MEYERSON, J., concur.