172 Ariz. 80 (1992)
834 P.2d 166
RIO RICO PROPERTIES, INC.
v.
SANTA CRUZ COUNTY; Arizona Department of Revenue, et al. Marion D. WIDGER, et al.
v.
ARIZONA DEPARTMENT OF REVENUE; Pinal County, et al.
Nos. TX 90-00339, TX 90-00080.
Tax Court of Arizona.
May 22, 1992.
*82 Nearhood & Associates, P.C. by James R. Nearhood, Phoenix, for plaintiffs-appellants Rio Rico.
Atty. Gen. by Janice M. Marquez and Michael F. Kempner, Phoenix, for defendant-appellee Arizona Dept. of Revenue.
Santa Cruz County Atty. by Holly Hawn Barton, Nogales, for defendant-appellee Santa Cruz County.
Pima County Atty. by Peter E. Pearman, Tucson, for Pima County.
Helm & Kyle, Ltd. by John D. Helm, Phoenix, for defendant counties.
Donald P. Roelke, Phoenix, for plaintiffs-appellants Widger.
Pinal County Atty. by Gordon S. Bueler, Florence, for defendant-appellee Pinal County.
*83 OPINION
MORONEY, Judge.
Trial to the Court in Rio Rico Properties, Inc., v. Santa Cruz County concluded on September 18, 1991. As originally filed, the Taxpayer's cause of action was set forth in three counts, Count I seeking special action relief. Four additional cases were consolidated into Rio Rico so that, as trial approached, seven separate claims were to be resolved. Except for Count I of the captioned case, the history and resolution of all claims in the consolidated case were set forth in the Court's Minute Order of May 4, 1992. The Count I special action is the only cause that concerns us here.
Trial to the Court in Widger v. Arizona Dep't of Revenue concluded on November 7, 1991. Like Count I of Rio Rico, Widger is a claim for special action relief.
On October 4, 1990, the Court of Appeals announced its decision in Hayden Partners Ltd. Partnership v. Maricopa County, 166 Ariz. 121, 800 P.2d 987 (App. 1990). This decision affects a very large number of property tax appeals which the Court has consolidated in A-M Community Developers v. Maricopa County, Tax Court No. TX 89-00107 (Consol.). This consolidated case will be referred to hereafter as the Hayden Partners cases.
The issue discussed and decided by the Court in this Opinion is an issue of some significance in the Hayden Partners cases. For that reason, lead counsel on both sides of the consolidated Hayden Partners cases sought to intervene in the two cases now before the bench. The Court denied intervention, but, after the Widger trial was done, the Court permitted counsel for both Taxpayers and government in the Hayden Partners cases to brief and argue their respective views on how the Court should decide the common issue.
In both Rio Rico and Widger, the Taxpayers' claims are based on A.R.S. § 11-506. A.R.S. § 11-506 provides for a refund for erroneous assessments after payment of the tax. The statute provides that the refund process begins with a claim filed with the appropriate county treasurer.
After suit was commenced in both Rio Rico and Widger, the Arizona Legislature amended A.R.S. § 11-506. In the amending act, the legislature provided that the act was retroactive to tax years beginning on or after January 1, 1986. Laws 1991, Ch. 182, eff. June 3, 1991, as amended by Laws 1991, Ch. 303, eff. June 28, 1991. The amendment narrows the scope of the refund authorized by the earlier statute.
In Rio Rico, the Santa Cruz County Assessor based the Rio Rico assessment on information obtained from entities which owned the property before the Taxpayer Plaintiff. The information was incorrect.
In Widger, the Taxpayers purchased farmland, subdivided it, and filed a plat map with the County Assessor. The land continued to be farmed, however, as the Taxpayers did not sell any lots. Subsequent to the filing of the plat map, the property was assessed as vacant land.
The Court holds that the provisions in the amending act which make the amendment to A.R.S. § 11-506 retroactive as to the claims of Rio Rico and Widger are a violation of the due process clauses of both the Arizona and Federal Constitutions. The Court further holds that "erroneous assessment" in A.R.S. § 11-506 before the statute was amended encompassed only assessments that were wrong because of an undisputed mistake of fact. Not within the ambit of the relief provided by the statute are assessments that were wrong because of a misinterpretation of law, or because of deliberate misapplication of policy by an agent of a taxing authority. In Rio Rico, the Court finds for the Government for the tax year 1987 and for the Taxpayer for tax years 1988 and 1989. In Widger, the Court finds for the Government.
Factual Setting in Rio Rico
The taxes at issue in Rio Rico are personal property taxes paid on secured personal property of the Rio Rico Resort in Santa Cruz County. The tax years at issue are 1987, 1988, and 1989. In preparing to assess a tax on personal property, an assessor may demand from a taxpayer a list of property owned or controlled by the taxpayer. *84 A.R.S. § 42-222. This demand is communicated to commercial businesses, such as the Taxpayer here, on Department of Revenue Form 520. Once the demand is made, the taxpayer is obligated to complete the form and return it to the assessor.
The Form 520 is designed so that the information on it is cumulative. When each year's Form 520 is sent to the taxpayer from the assessor, the property reported in the previous year is already listed. Only current year changes are added by the taxpayer. The Form 520 does not list individual items of property. Property is separated into categories defined by the Department of Revenue. Categories are listed by each year in which property in that category was acquired. The total acquisition cost of each category for each year is also noted on the Form 520. Valuation is determined by applying a depreciation formula to each annual acquisition cost. Such depreciation-modified costs are added in each category. The resulting category costs are totalled to obtain the valuation. When a new owner acquires the property, the cumulative record should be deleted, and the new owner's acquisition cost should replace it.
The Taxpayer acquired the resort in May 1987. By that time, the 1987 Form 520 had already been sent to the previous owner. The 1987 Form 520 was not returned to the Assessor. The Taxpayer was billed for its personal property tax on the secured roll based on a valuation of the property listed on the form when it was sent to the previous owner. The valuation was $496,589. The Taxpayer paid the tax billed.
Suzanne Jackson testified at trial that she was the Deputy Assessor who had the responsibility for assessing personal property at the Rio Rico Resort. When she did not receive a completed 1987 Form 520 from the property owner, she created one, using information supplied earlier to the Assessor on Forms 520 by owners of the resort previous to the Taxpayer. These previous owners had misunderstood the form, and on earlier filed Form 520's, had duplicated cumulative categories. New owners did not always delete previous owners' costs. When Ms. Jackson prepared the substitute 1987 Form, based on the records she had before her, she incorrectly included a large amount of property which should have earlier been deleted. She did not note any potential discrepancy and made no inquiry of the Taxpayer.
Each year, during the relevant tax years, the Department of Revenue prepared Forms 520 for Santa Cruz County. Before a form was sent to a taxpayer, the Department placed on the form the cumulative listing of all property which previous Forms 520 indicated were in the hands of the taxpayer at the beginning of the previous year. It was the taxpayer's obligation to enter on the form changes made during the previous year and return the form to the assessor. When the Rio Rico 1987 Form 520 came from the Department, it did not show all of the property which Ms. Jackson later deduced was in use at the resort. When she reconstructed what she believed the 1987 Form 520 should have shown, it was too late to add the property she found to the secured roll, so Ms. Jackson placed it on the unsecured tax roll. The Assessor billed the tax on the newly discovered property to the Taxpayer as a tax on escaped property. The Taxpayer denied liability for this tax and refused to pay it, suggesting that Santa Cruz County collect from the previous owner. The record is silent as to how this particular tax bill was ultimately resolved. Rio Rico Properties did not pay it, however.
On the Taxpayer's Form 520 for 1988, the Department of Revenue added the 1987 property which Ms. Jackson had placed on the unsecured roll. As a result, on the secured tax roll the personal property valuation determined by the Santa Cruz Assessor for 1988 was $1,213,090, and for 1989 was $1,126,155.
Whether as a resort, or as a provider of overnight accommodations for road weary travelers, the Rio Rico Resort has not been much of an economic success. The motel was constructed in the 1960's and has passed through a succession of owners, often as a result of bankruptcy or foreclosure. In 1978, a business entity identified *85 in the evidence as Rio Rico Hotel acquired the resort out of bankruptcy proceedings. In 1982, Rio Rico Hotel sold the property to U.S. Hotel Properties for $3,600,000. In May 1987, Rio Rico Hotel reacquired the property after a judicial foreclosure of a second deed of trust, paying at the sheriff's sale $2,243,698. The day after it purchased the resort at the sheriff's sale, Rio Rico Hotel sold it to the Taxpayer for $2,151,962. These transactions and these prices were known to the Santa Cruz County Assessor.
When the Taxpayer received the Forms 520 for 1988 and 1989, and again when it received its tax statement for each of those years, it should have noted that the Department's value as listed on the Form 520 and the Assessor's valuation on the tax bills were markedly disproportionate to the value of the personal property on hand. The Assessor also should have noted the very high valuations of personal property in comparison to the total value of the resort. The Assessor should have further inquired of the Taxpayer.
Neither the Taxpayer nor the Assessor noticed these discrepancies, however. It was not until 1990 that a consultant for the Taxpayer discovered that the valuations were much greater than they should have been.
At trial, Ms. Jackson testified that, had the earlier forms provided the information she later determined to be correct, and had the Taxpayer properly completed the Forms 520 for 1987, 1988, and 1989, she would have computed the valuations as follows: for 1987, $250,567; for 1988, $225,168, and for 1989, $220,052.
Another witness who testified was Hewitt H. Howard. Mr. Howard testified that he was the "Supervisor of Personal Property" for the Department of Revenue for 22 years ending in September 1989. He further testified that he was the author of the Department of Revenue personal property guidelines. According to Mr. Howard, incorrect excessive valuations happened quite frequently as a result of taxpayer misinformation on Forms 520. Once the errors were recognized by the Department, refunds were made to the taxpayer pursuant to A.R.S. § 11-506. Mr. Howard testified that these refunds were made both before and after January 1, 1986.
The evidence reflects that on October 23, 1990, the Taxpayer's attorney drafted a demand letter to Santa Cruz County demanding that the County Board of Supervisors direct the County Assessor to reduce the full cash value for the Taxpayer's personal property for the years 1987 through 1990 to $200,000 for each year. The Taxpayer also demanded a refund for the difference for each of the years referenced in the demand letter. The record reflects that the letter was sent by the Taxpayer's attorney and received by the County Board of Supervisors. There was no evidence provided as to when the letter was mailed or when it was received. Nor was any evidence presented as to when the property tax was paid. In the Pretrial Statement, the parties agreed that the 1987 tax payment was never delinquent, however.
On October 24, 1990, the Taxpayer's attorney drafted a letter to the Department of Revenue. In this letter, the Taxpayer advised the Department that the value the Santa Cruz Assessor had assigned to the Taxpayer's personal property for the tax years 1987 through 1990 was greatly in excess of its taxable value. The Taxpayer then demanded that the Department authorize the Santa Cruz County Board of Supervisors to direct the County Treasurer to refund the excessive taxes paid. The Taxpayer further demanded that the Department verify to the Santa Cruz County Board of Supervisors that the Assessor's valuation of the Taxpayer's personal property was excessive and should be reduced to $200,000 for each of the years 1987 through 1990. Again, while there was evidence of the date the letter was composed, and evidence that it was mailed to the Department, there was no evidence of the date of mailing, nor of the date of receipt.
In both letters, the Taxpayer cited as authority for its demands A.R.S. §§ 11-505 and 11-506. The Complaint alleges as a basis for relief "mistake, error, or oversight." At trial, counsel for the Taxpayer *86 made clear that the Taxpayer's claim for relief was based on an erroneous assessment of its property for each of the three years under review. Neither demand letter, however, used the term "erroneous assessment" nor advised why or how the assessment was incorrect, claiming only that the valuation was excessive. There was no challenge by any Defendant to the sufficiency of the Taxpayer's claim.
The Taxpayer filed its Complaint on October 25, 1990, naming as Defendants Santa Cruz County, the Department of Revenue, and various Santa Cruz County officials. Except in the Answer to the Complaint by Santa Cruz County, neither County nor Department responded to the Taxpayer's demand letter. In its Answer on behalf of itself and of its officials, Santa Cruz County acknowledged receipt of the Taxpayer's letter but denied the truth of the allegations that it contained.
Out at the Department of Revenue, nothing happened. Some eleven months later, the Taxpayer attempted to enter the Department's default. The Department then filed an Answer advising the other parties to the litigation, and presumably the world, that it proposed not to participate in the case. The Department was apparently trying to establish itself as a nominal party and thus avoid any claim against it for attorney's fees. See Bromley Group, Ltd. v. Arizona Dep't of Revenue, 826 P.2d 1158 (App. 1991). The Department did, however, appear for trial.
Factual Setting in Widger
In Widger v. Arizona Dep't of Revenue, the essential facts are somewhat easier to set forth than they are in Rio Rico. To begin with, there is nothing in the record that reflects that there ever was a claim letter to anyone, not in the pleadings, the Pretrial Statement, nor in the evidence. Nor is there any evidence that the Department of Revenue was ever asked to verify an erroneous assessment.
The issue in Widger concerns the Pinal County Assessor's valuation of 593 acres southwest of Maricopa. Based on the evidence presented at trial, this property has been continuously farmed since a date lost forever in the mist of antiquity. The relevant tax years are 1987 and 1988. The evidence showed that the property was farmed before 1987, during 1987 and 1988, and after 1988.
There was a time when the Pinal County Assessor valued the property as land used for agricultural purposes pursuant to A.R.S. § 42-141(A)(5). (A.R.S. § 42-167 was not enacted until 1989.) For the tax years in issue, however, the Assessor valued the property as vacant land. Valuation as agricultural property results in a significantly smaller tax than valuation as vacant land. See Title USA v. Maricopa County, 168 Ariz. 10, 810 P.2d 633 (Tax 1991).
In 1975, the property was sold, and the buyer subdivided it into 185 lots, none of which is as large as twenty acres. The lines dividing the property into lots of approximately 3-plus acres were drawn only on the plat map. There was no indication on the land itself that it had been divided.
No lots were sold, and the property continued to be farmed. The Taxpayers now seek to have the 1987 and 1988 valuations reduced to what they would have been had the land been then valued as being used for an agricultural purpose. The Taxpayers claim that the vacant land valuation for the relevant tax years was the result of an erroneous assessment. The Taxpayers cite as authority for their position A.R.S. § 11-506.
Representatives of the Taxpayers testified that the Taxpayers were not aware that the property was not being valued as agricultural land until 1989. This is somewhat puzzling, as, in both 1987 and 1988, the Taxpayers appealed to the Pinal County Assessor pursuant to A.R.S. § 42-221. In both tax years, the appeal was based on a claim that the property was appraised higher than the market price.[1] In the appeal *87 for 1988, the Taxpayers described the property as "raw, inaccessible desert land".
Testimony at trial indicated that the Taxpayers' appeals were filed by a property consultant who was not aware that the land was being farmed. Whatever was the situation, there is no rational justification for the Taxpayers not to have known that their property was not being valued as land used for agricultural purposes.
In 1989, the Taxpayers caught on. A valuation appeal to the Assessor was filed. The Taxpayers claimed an entitlement to have their land valued as agricultural. The parties settled the litigation, and the Taxpayers' property was valued as agricultural. In 1990 and 1991, the Assessor valued the property as land used for agricultural purposes.
At trial, a representative of the Pinal County Assessor testified that, when the plat map of the subdivided property was filed, the property lost its right to an agricultural classification. This, according to the witness, was in accord with then current Department of Revenue guidelines. The Taxpayers claim that their property has always been used to grow field crops. Department guidelines for land used to grow field crops did not permit an agricultural valuation for property of less than twenty acres, except in exceptional circumstances. Prior to the 1989 tax year, the Pinal County Assessor did not value contiguous parcels owned by the same entity as a single piece of property. The Assessor's representative testified that this standard was uniform throughout Pinal County and, in the view of the Assessor, comported with Department guidelines. The Taxpayers introduced evidence to show that at least 98 parcels in Pinal County of less than twenty acres were valued as property used for an agricultural purpose.
The Court finds from the evidence that the Pinal County Assessor interpreted the Department's guidelines as not permitting contiguous parcels owned by the same entity to be valued as a single parcel. The Pinal County Assessor also interpreted Department guidelines, in all but a few situations, to preclude the agricultural use valuation for property of a size of less than twenty acres.
In 1989, A.R.S. § 42-167 was enacted. This statute permitted the combining of contiguous parcels into a single taxable unit. The witness testified that, since 1989, the Pinal County Assessor combines contiguous parcels owned by the same taxpayer, and used for an agricultural purpose, into a single unit for valuation.
The Taxpayers argue that the correct interpretation of the guidelines is contrary to the positions taken by the Assessor. The Taxpayers argue that that part of the guidelines which impose the twenty acre limitation impose it with the language "minimum combined acreage". According to the Taxpayers, this language clearly permits contiguous acres owned by the same owner to be valued as a single unit.
Constitutionality of the Amending Statute
In the argument presented to the Court by counsel for the consolidated Hayden Partners cases, counsel for the government argued that the Court of Appeals had already passed on the constitutionality of the retroactive aspects of the act which amended A.R.S. § 11-506. The case cited to the Court is E.C. Garcia and Co., Inc. v. Ariz. Dep't of Revenue, 98 Ariz.Adv.Rep. 47 (App. 1991). This Court does not believe the Court of Appeals in Garcia addressed the issues presented in the cases now under discussion.
Widger was filed on April 4, 1990, and Rio Rico was filed on October 25, 1990. On June 3, 1991, before either of these cases were tried, the statute which amended A.R.S. § 11-506 became effective. Laws 1991, Ch. 182, eff. June 3, 1991, as amended by Laws 1991, Ch. 303, eff. June 28, 1991. The act which accomplished the amendment indicated that the amendment, along with other provisions in the act, "is curative in nature and is intended to clarify statutory intent and ratify historical interpretation and does not provide for any substantive changes in the law". Id. The act also made its provisions retroactive to tax years beginning on or after January 1, *88 1986. The Taxpayers in both Rio Rico and Widger argue that the amended statute violates the due process clause of both the Arizona and Federal Constitutions. The Counties and the Department of Revenue argue that the amended statute applies. They cite the language quoted above from the act as an expression of legislative intent. It is the governments' position that the act made no substantive change from former law and impaired no right of the taxpayer.
The state may not enact legislation which deprives any person of property without due process of law. U.S. CONST. amend. XIV, § 1; Ariz. CONST. art. II, § 4. Property includes any vested right of any value. Allen v. Graham, 8 Ariz. App. 336, 339, 446 P.2d 240, 243 (1968). Where a legislative act effects a deprivation of property in favor of government, due process of law requires that there be a procedure in place whereby the person deprived can be heard and a determination made that the deprivation can be justified by a public need which outweighs the person's individual right to keep the property. Large v. Superior Court, 148 Ariz. 229, 235-236, 714 P.2d 399, 405-406 (1986); Arizona Public Service Co. v. Arizona Corp. Comm'n, 155 Ariz. 263, 271, 746 P.2d 4, 12 (App. 1987), rev'd in part on other grounds, 157 Ariz. 532, 760 P.2d 532 (1988). No such procedure is provided in the act which amended A.R.S. § 11-506 in 1991.
Section 8 of the amending act provides that it is retroactive to tax years beginning from and after December 31, 1985. Laws 1991, Ch. 182, § 8, eff. June 3, 1991, as amended by Laws 1991, Ch. 303, § 7, eff. June 28, 1991. Therefore, if A.R.S. § 11-506, before it was amended, provided a vested property right that A.R.S. § 11-506 after amendment takes away, so much of Section 8 as applies to A.R.S. § 11-506 is void because it violates the due process clauses of the Arizona and Federal Constitutions.
Prior to its amendment, A.R.S. § 11-506 consisted on one paragraph, which read as follows:
If all or a part of a property tax has been paid on an erroneous assessment after such assessment is verified by the department of revenue, the county board of supervisors shall direct the county treasurer to grant a refund to the taxpayer, to the extent of the erroneous tax paid pursuant to such erroneous assessment after correcting the tax roll, provided the taxpayer submits a claim therefor to the county treasurer within three years after the payment of such erroneous tax. Such claim shall be processed in the same manner and subject to the provisions as provided in § 11-505.
The act which amended A.R.S. § 11-506 designated the existing paragraph of the statute as Paragraph A, and added a Paragraph B. Paragraph A was the same as the statute prior to amendment except that the county assessor was added as a necessary verifying agent. Paragraph A after amendment reads as follows:
If all or a part of a property tax has been paid on an erroneous assessment after such assessment is first verified by the county assessor and then verified by the department of revenue, the county board of supervisors shall direct the county treasurer to grant a refund to the taxpayer, to the extent of the erroneous tax paid pursuant to such erroneous assessment, after correcting the tax roll, provided the taxpayer submits a claim on a form approved by the department to the county treasurer within three years after the payment of such erroneous tax. Such claim shall be processed in the same manner and subject to the provisions as provided in § 11-505.
Paragraph B, added to the statute by the amending act, reads as follows:
For purposes of this section, an erroneous assessment is limited to a clerical or computational error or any other error not involving the exercise of discretion, opinion or judgment by the assessor or the department. This section does not apply to questions of valuation that can be appealed according § 42-221 or 42-602. An erroneous assessment does not include an assessment that is uniformly made according to department of revenue *89 guidelines for all similarly classified property.
Laws 1991, Ch. 182, § 2, eff. June 3, 1991, as amended by Laws 1991, Ch. 303, § 2, eff. June 28, 1991.
Briefs of counsel expended much ink on whether A.R.S. § 11-506 is "substantive" or "procedural". The distinction is important to the Court's analysis because procedural legislation cannot provide rights which vest. Neither constitution, therefore, protects any benefit granted by procedural legislation. State v. Leonard, 151 Ariz. 1, 41, 725 P.2d 493, 496 (1986).
Legislation which defines, creates, or regulates rights is substantive. Legislation which prescribes the manner by which rights are implemented or enforced is procedural. Allen v. Fisher, 118 Ariz. 95, 96, 574 P.2d 1314, 1315 (App. 1978). A single legislative act or statute can be composed of elements that are both substantive and procedural.
A.R.S. § 11-506 provides for a refund, after payment of the tax, for taxes which were based on erroneous assessments. The statute, therefore, creates a right, and is substantive law. There are portions of the statute which provide the process by which the right created is to be implemented. These portions of the statute are procedural.
The inquiry must now turn to whether the amendments to A.R.S. § 11-506 are substantive or procedural, and, if substantive, whether the changes impair any rights defined in the statute before amendment. The Court is of the opinion that the amendments to Paragraph A are procedural, but that Paragraph B is substantive.
Paragraph B seeks to define the term "erroneous assessment". An erroneous assessment is the event upon which the right created in A.R.S. § 11-506 is predicated. Therefore, legislation defining erroneous assessment describes the right created by the statute, and is substantive law. The Court must now consider whether the addition of Paragraph B limits or impairs any right which existed before the statute was amended.
The Court holds that it does. First of all, it is plain from the language of Paragraph B that the legislature intended to qualify the term "erroneous assessment". In the preamble to the act which added Paragraph B to the statute, the legislature stated that the amending act "is curative in nature and is intended to clarify statutory intent and ratify historical interpretation and does not provide for any substantive changes in the law". Laws 1991, Ch. 182, § 1, eff. June 3, 1991, as amended by Laws 1991, Ch. 303, § 1, eff. June 28, 1991.
When a legislature enacts a statute, it is the language of the statute which becomes the law. The unexpressed intent of the legislature in enacting the statute has no application. Members of the Board of Education v. Leslie, 112 Ariz. 463, 465, 543 P.2d 775, 777 (1975). If certain constitutional parameters are met, the legislature may delegate to the executive branch of government the power to interpret its law. Lake Havasu City v. Mohave County, 138 Ariz. 552, 675 P.2d 1371 (1983). A.R.S. § 42-141(A)(5), for example, directs the Department of Revenue to "prepare ... manuals and ... necessary guidelines" defining the appraisal methods and techniques by which land used for agricultural purposes is to be valued. If a litigant challenges an interpretation made by the executive branch of government, however, it is the Court that has the exclusive authority to decide what is the correct interpretation. Chevron Chemical Co. v. Superior Court, 131 Ariz. 431, 440, 641 P.2d 1275, 1284 (1982); Martin v. Moore, 61 Ariz. 92, 143 P.2d 334 (1943); Knapp v. Cardwell, 667 F.2d 1253, 1260 (9th Cir.1982).
In interpreting a statute, the Court will first examine the language to be interpreted. If that language expresses a clear unequivocal standard, the Court will interpret the statute accordingly. It will look for no further guidance. Escalanti v. Superior Court, 165 Ariz. 385, 799 P.2d 5 (App. 1990); Collier v. Connolley, 285 Md. 123, 400 A.2d 1107, 1109 (1979).
*90 If the language of the statute is capable of more than one reasonable interpretation, the Court will attempt to ascertain what the legislature intended when it enacted the statute. There is a substantial body of law upon which a court may draw in order to assist it to discern just what was the legislative intent. The Court may look to the legislative history which led to the passage of the act. It may also consider subsequent legislation on the same subject if no other clues more compelling exist. The expression by one legislature of what another legislature intended a number of years earlier, however, is not given much weight. Federal Express Corp. v. Skelton, 265 Ark. 187, 578 S.W.2d 1, 7-8 (1979).
A.R.S. § 11-506 has not been interpreted often by our courts. In Arizona Telco Federal Credit Union v. Arizona Dep't of Revenue, 158 Ariz. 535, 764 P.2d 20 (App. 1988), the taxpayer, a federal credit union, was classified in class 3 pursuant to A.R.S. § 42-162. It was undisputed that Department of Revenue guidelines placed credit unions in class 4. Property in class 3 is assessed at 25% of its valuation, and property in class 4 is assessed at 16% of the valuation. A.R.S. § 42-227. The erroneous assessment resulted from a failure by the assessor to apply unequivocal department guidelines to the classification of the taxpayer's property. Both the Assessor and the Department acknowledged that the property had been misclassified. The Court of Appeals held that the credit union was entitled to relief pursuant to A.R.S. § 11-506.
The Assessor's misclassification in Telco is clearly not a clerical or computational error. Since the classification decision to place the credit union in class 3 was one which required discretion, opinion or judgment by the assessor, it was an error which would not give rise to an erroneous assessment under the amended statute. The amended statute, therefore, more narrowly defines erroneous assessment than did the statute before amendment. The Court holds that that portion of the amending statute which proports to retroactively amend A.R.S. § 11-506 constitutes a substantive change in previous law.
A right vests when every event has occurred which needs to occur to make the implementation of the right a certainty. In Hall v. A.N.R. Freight Systems, Inc., 149 Ariz. 130, 717 P.2d 434 (1986), the Court said "[A] right vests only when it is actually assertable as a legal cause of action or defense or is so substantially relied upon that retroactive divestiture would be manifestly unjust." Hall, 149 Ariz. at 140, 717 P.2d at 444. Once the taxpayer makes his claim against the county as provided in the statute, assuming all of the predicate facts are true, the taxpayer is entitled to a refund. The Court holds that the Taxpayers' right to a refund pursuant to 11-506 vests when the claim against the County is made.
The Court is of the opinion that the legislature intended that an administrative claim be filed with the county treasurer, and acted upon, before a controversy could exist between taxpayer and government which is cognizable by the Court. Telco, however, holds otherwise. Telco holds that the Complaint itself, if the county treasurer is named as a defendant and served, can be the claim against the treasurer required in the statute. While this Court disagrees with this holding, it is obligated to follow it. Even so, Telco can be distinguished from Rio Rico and Widger. In Telco both the County and the Department had been apprised of the erroneous assessment and had acknowledged it. No issue was raised in either case by any Defendant about the sufficiency of any Taxpayer claims on the treasurer pursuant to A.R.S. § 11-506. Therefore, the Court makes no ruling with respect thereto.
Since the claim against the Counties in both Rio Rico and Widger were made before the amending act became effective, its retroactive application affects a vested substantive right of the Taxpayers.
The Counties and the Department have argued that a person cannot have a vested right in a tax or in the absence of a tax. Therefore, says the Government, no one can have a vested right in any benefit from A.R.S. § 11-506. A.R.S. § 11-506 *91 does not define or impose a tax. It provides a right to a refund for money collected as a tax which never should have been collected at all. The Court holds that the right to such a refund may become a vested right.
The amending act, in its statement of intent, states that the purpose of the act is "curative ... and does not provide for any substantive change in the law." Laws 1991, Ch. 182, § 1, eff. June 3, 1991, as amended by Laws 1991, Ch. 303, § 1, eff. June 28, 1991. For reasons set forth herein, the Court does not believe the quoted premise to be accurate. The amendment to A.R.S. § 11-506 is a substantive change.
"Although curative statutes are necessarily retrospective in nature, it is well settled that such a statute may not impair vested rights." County of Cochise v. Pioneer National Title Insurance Co., 115 Ariz. 381, 384, 565 P.2d 887, 890 (App. 1977). "[S]ubstantive rights may not be impaired, once vested." Hall, 149 Ariz. at 140, 717 P.2d at 444.
Based on the forgoing authority, the Court holds that the amending act, to the extent that it attempts to retroactively amend A.R.S. § 11-506, impairs vested rights and is a violation of the Arizona and Federal Constitutions. That portion of the amending act is, therefore, void.
An Erroneous Assessment Before The Amendment of the Statute
The resolution of these cases turns on the interpretation of "erroneous assessment" in the context of A.R.S. § 11-506 prior to its 1991 amendment. The Taxpayers seek a broad interpretation, equating "erroneous" with "incorrect for any reason". The Taxpayers would have the Court construe "erroneous" to include errors which arise from an administrative misinterpretation of the law.
The Court is of the opinion that to so interpret A.R.S. § 11-506 would not reflect the legislative intent. In State ex rel. Larson v. Farley, 106 Ariz. 119, 471 P.2d 731 (1970), the Arizona Supreme Court set forth the standard by which statutes are to be interpreted when specific language is capable of more than one connotation.
The general rule is that the court may look to prior and contemporaneous statutes in construing the meaning of a statute which is uncertain and on its face susceptible to more than one interpretation. If reasonably practical, a statute should be explained in conjunction with other statutes to the end that they may be harmonious and consistent. If the statutes relate to the same subject or have the same general purpose  that is, statutes which are in pari materia  they should be read in connection with, or should be construed together with other related statutes, as though they constituted one law. As they must be construed as one system governed by one spirit and policy, the legislative intent therefor must be ascertained not alone from the literal meaning of the wording of the statutes but also from the view of the whole system of related statutes. This rule of construction applies even where the statutes were enacted at different times, and contain no reference one to the other, and it is immaterial that they are found in different chapters of the revised statutes.
Farley, 106 Ariz. at 122, 471 P.2d at 734.
In Arizona Dep't of Revenue v. Maricopa County 120 Ariz. 533, 587 P.2d 252 (1978), our Supreme Court more succinctly stated the same proposition. "It is a basic principle of statutory construction that tax statutes relating to the same subject should be read together and construed as a whole." Arizona Dep't of Revenue, 120 Ariz. at 535, 587 P.2d at 254. In State ex rel. Arizona Dep't of Revenue v. Chastain Builders, Inc., 137 Ariz. 240, 669 P.2d 1017 (App. 1983), the Court of Appeals, after citing the foregoing language from Arizona Dep't of Revenue v. Maricopa County, further observed: "[T]he various provisions of our tax statutes are to be read together and ordinarily construed as a whole." Chastain, 137 Ariz. at 242, 669 P.2d at 1019. Applying the forgoing principles, the Court concludes that the word "erroneous" should be much more narrowly *92 construed than as argued by the Taxpayers.
In order for a taxpayer to obtain a refund authorized by A.R.S. § 11-506 as that statute existed before the 1991 amendment, a property tax had to have been paid by the taxpayer on an "erroneous" assessment, and the Department of Revenue had to have verified that such an assessment was "erroneous". The statute is contained in Title 11, the Title that relates not to taxation, but to the administration of counties. It is in an article that sets out the duties of the county treasurer and is preceded by two statutes which direct themselves to the correction of errors made in the maintaining of the treasurer's accounts. A.R.S. §§ 11-504, 11-505. Nowhere in the article is any provision made for the county treasurer assuming the role of fact finder or interpreter of the law. Nor is there any provision for an appeal to the courts if a claim for a refund is refused. The statutory scheme provides for the Department of Revenue to confirm that the erroneous assessment was made and for the board of supervisors to order the treasurer to pay it. It is entirely an administrative process. The only remedy to the taxpayer, if its claim for refund is refused, is by special action asking the court to order the Department and the Board of Supervisors to do their duty as set forth in the statute.
A.R.S. §§ 42-176, 42-246, and at the time the Widger suit was filed, § 42-245, provide for taxpayer appeals to superior court from administrative determinations of the valuation and classification of the taxpayer's property. Both A.R.S. §§ 42-245 and 42-246 required such appeals to be filed by November 1 of the tax year. A.R.S. § 42-176, which authorizes appeals from the State Board of Tax Appeals, requires such appeals be filed within 60 days after the date of the State Board's decision or, under certain circumstances, by November 1.[2] The statutes describing the jurisdiction of the State Board require that it do its work well within the tax year. As a result, with few exceptions, no matter by what authority one comes to the Tax Court to appeal valuation or classification, he or she must get there by November 1 of the tax year. These statutes are jurisdictional. Failure to meet their timetable is fatal to a taxpayer's claim. Pesqueira v. Pima County Assessor, 133 Ariz. 255, 650 P.2d 1237 (App. 1982); Read v. Arizona Dep't of Revenue, 166 Ariz. 533, 803 P.2d 944 (Tax 1991).
There is another statute which authorizes refunds of property taxes. A.R.S. § 42-204 authorizes the recovery of any tax illegally collected if suit for such recovery is commenced within one year after the payment of the first installment of the tax. Subsection (E) of A.R.S. § 42-204, however, specifically excludes from the ambit of A.R.S. § 42-204 property valuation or classification appeals. A.R.S. § 42-204(E) requires that such appeals may only be taken to the superior court in the "time and manner prescribed in § 42-176, subsections A, B and C or § 42-246, whichever is applicable." See R.C.J. Corp. v. Arizona Dep't of Revenue, 168 Ariz. 328, 812 P.2d 1146 (Tax 1991). In legislation unequivocally intended to govern property tax appeals, the legislature has made it quite clear that it intends to impose strict time limits on when appeals may be taken from the administrative valuation or classification of property. In view of the clear direction in A.R.S. §§ 42-176 and 42-246, it would be difficult to construe A.R.S. § 11-506 as providing an alternate authority to review administrative property valuation or classification decisions.
The Court holds that the legislature intended, in enacting A.R.S. § 11-506, that the remedy provided therein was to be implemented administratively. The Court further holds that "erroneous assessment" does not mean one the incorrectness of which is to be determined by either a judicial or quasi-judicial fact finding or law interpreting process. The scope of "erroneous assessment" as used in A.R.S. § 11-506 *93 prior to the 1991 amendment included no more than an assessment that arises from a mistake in fact so indisputable when revealed that the existence of the mistake could not reasonably be denied. "Erroneous assessment" did not include within its scope an assessment that is determined to be incorrect by an interpretation by a court of law. Nor does it include an assessment the incorrectness of which arises from a deliberate misapplication of policy by an agent of a taxing authority.
In order for a claim to lie pursuant to A.R.S. § 11-506 prior to its amendment, the Department of Revenue must acknowledge the mistake. Therefore, in a special action to require the county to make the refund, the Department of Revenue is a necessary Defendant. The Court is further of the opinion that a necessary prerequisite to such a claim is either an acknowledgment of the mistake by the Department, or a specific refusal to acknowledge. If the Department fails to respond at all to inquiry, the lapse of enough time for the Department to have investigated the matter can be deemed a refusal to acknowledge the mistake. This prerequisite was not met in Rio Rico for 1987. The issue, however, was not raised by the government.
The Court holds that when a statute predicates a remedy on an act by an agent of government, and that agent has not so acted, if demand is made upon that agent to so act, the agent has a duty to respond to the demand within a reasonable time. In both of these cases, the Department of Revenue was named as a party and served. It refused to effectively respond. The Court holds, therefore, that the failure of the Department to acknowledge the mistake that the evidence showed existed in Rio Rico is not fatal to the Taxpayer's claim.
A.R.S. § 11-506 provides for a refund "provided the taxpayer submits a claim therefor to the county treasurer within three years after the payment of such erroneous tax." The payment of the tax within three years is, therefore, an element of the taxpayer's claim. The taxpayer must provide evidence that the tax was paid within three years prior to the submission of the claim.
No evidence was provided to the Court from which the Court could find that the Rio Rico Taxpayer paid its property tax for 1987 within three years of its claim against Santa Cruz County. The evidence from the Taxpayer's viewpoint dates its claim against the Santa Cruz County Treasurer at some time after October 23, 1990. A.R.S. § 42-342(B)(2) provides that one-half of the tax was due on October 1, 1987. First half taxes would have been delinquent on November 1, 1990. A.R.S. § 42-381(A). The evidence was that the tax was never delinquent. Second half taxes were due March 1, 1991, but taxpayers may pay the full year's taxes with the first installment. A.R.S. § 42-342(B)(3)-(5). The Taxpayer has failed to prove an essential element of its claim for 1987. The Court finds for Santa Cruz County on the Taxpayer's § 11-506 claim for 1987.
In Rio Rico for 1988 and 1989, the Assessor made the challenged assessment based on fact information that was incorrect. It was incorrect because previous owners of the property had misinterpreted the Form 520. Once the misinterpretation was corrected, the Assessor acknowledged a different valuation would have resulted. The Court holds that an assessment based on such a mistake of fact as existed in Rio Rico is an erroneous assessment pursuant to A.R.S. § 11-506, before its amendment in 1991.
In Rio Rico, the Taxpayer argued it was entitled to have its property valuations lowered for the relevant years. It presented evidence of the correct full cash value of its property. Valuation evidence, however, is not relevant in a claim pursuant to A.R.S. § 11-506. What is relevant is evidence that a mistake was made, and evidence of what the result would have been had the mistake not been made. The Court finds that the Taxpayer is entitled to a refund of its taxes paid on secured personal property for the tax years 1988 and 1989. The refund is to be measured by the *94 difference between the tax paid and the tax that would have been assessed if the valuations had been those determined by Ms. Jackson. Those valuations are $225,168 for 1988 and $220,052 for 1989.
In Widger, the Pinal County Assessor interpreted the law so that an agricultural classification was not available to land subdivided for sale as residential lots. The Assessor further refused such a classification to lots of less than 20 acres, and, for assessment purposes, refused to group contiguous lots as one unit. Widger's property, therefore, was not valued as being used for agricultural purposes.
The Assessor's acts, whether right or wrong, were not mistakes. They were an implementation of policy. For that reason, the Taxpayers in Widger have no claim under A.R.S. § 11-506. If the Assessor's interpretation of Department guidelines was incorrect, Widger's remedy was in a valuation appeal in the relevant years. A.R.S. § 11-506 was never intended to be used as a vehicle to litigate valuation and classification appeals after the time had passed to litigate them under Title 42.
NOTES
[1] Land used for agricultural purposes is not valued by market price. It is valued "using solely the income approach to value without any allowance for urban or market influences". A.R.S. § 42-141(A)(5).
[2] A different procedure, and perhaps a different timetable, is authorized for private car companies and unsecured personal property.