[Civil No. 3831. Filed October 18, 1937.]

[72 Pac. (2d) 439.]

CITY OF BISBEE, a Municipal Corporation, Appellant, v. COCHISE COUNTY, DANIEL S. KITCHEL, as Treasurer and *Ex-officio* Tax Collector of Cochise County, and JOHN HILD, HARLIE COX and JOHN MURPHY, as the Board of Supervisors of Cochise County, Appellees.

Mr. James T. Gentry and Mr. W. G. Gilmore, for Appellant.

Mr. Frank E. Thomas, County Attorney, and Mr. Geo. M. Roark, his Deputy, for Appellees.

LOCKWOOD, J.—The City of Bisbee, a municipal corporation, hereinafter called plaintiff, filed suit against the county of Cochise, Daniel S. Kitchel, as treasurer and *ex-officio* tax collector of the county, and the members of the board of supervisors of said county, to recover certain interest, penalties, and fees on delinquent taxes levied by the plaintiff for the years 1918 to 1930, inclusive. It °was alleged that under the law the county treasurer of Cochise County was made the agent of plaintiff to collect and receive all city taxes due, and that the various county treasurers had collected as penalties and fees on delinquent taxes accruing to plaintiff during the years 1918 to 1929, inclusive, $2,730.86, together with an unknown amount up to June 13, 1931, but had failed and refused to pay the same to plaintiff, and had deposited the money in the general fund of Cochise County. The suit asked that a writ of *mandamus* issue compelling the payment of the sum mentioned to plaintiff, together with any further payments on delinquent taxes that might have been retained by the county treasurer up to June 13, 1931.

The defendants interposed a demurrer based on four grounds, (a) that the complaint did not state facts authorizing the issuance of a writ of *mandamus,* (b) that it did not state facts constituting a cause of action, (c) that the indebtedness was barred by the statute of limitations, and (d) that it did not allege that a demand, such as the law required, was presented to and rejected by the board of supervisors. The court sustained the demurrer, and, judgment being rendered against plaintiff, dismissing the action, an appeal was taken to this court.

In the case of *City of Bisbee* v. *Cochise County,* 44 Ariz. 233, 36 Pac. (2d) 559, we held that the complaint did state a cause of action against the county treasurer

of Cochise County at the time the suit was filed, for the reason that the plaintiff under the law was entitled to the money sued for and the presumption of law was that any funds illegally retained by any county treasurer had passed into the hands of the current treasurer and, therefore, the treasurer at the time the suit was brought was the proper person to sue, but held that the county itself and the supervisors were not proper parties because, under the allegations of the complaint, the money in question was a trust fund belonging to the plaintiff, and not to the county, and was, therefore, never under the jurisdiction of the supervisors.

It was further urged that the claim was barred by the statute of limitations, being section 2058, Revised Code 1928, on the ground that it was a liability created by statute, and that any actions on such liability must be brought within one year. We expressly declined to pass upon the question as to whether the statute of limitations in general applied to municipal corporations, in the absence of an explicit statement by the legislature that it did, for the reason that, since it was pleaded the money in question was held as an express trust, the statute did not begin to run until the trustee had explicitly called to the attention of the *cestui que* trust that he had repudiated the trust, and no such notice was set up in the complaint, and the case was sent back with instructions to overrule the demurrer to the complaint so far as the county treasurer was concerned, and to proceed to trial on the issues presented thereby. A motion was thereafter made by plaintiff to substitute in place of Daniel S. Kitchel, Carl Gordner, who had in the interim become the duly elected, qualified, and acting county treasurer and *ex-officio* tax collector of Cochise County, which motion was granted. Gordner filed various pleas to the jurisdiction of the court and in bar of the action,

and the case was then tried on its merits. The evidence, taken in the strongest manner in support of the judgment, in which manner of course we must take it, shows that the various county treasurers of Cochise County from 1918 to June 12, 1931, had collected as penalties upon delinquent city taxes due plaintiff the sum of $2,928.42, which had never been paid to plaintiff; that at some time prior to December 31, 1926, a demand was made upon the then county treasurer by a representative of plaintiff for the payment of that portion of the fees and penalties above specified then due, and the city was informed that the county claimed those fees as its own and had applied them to county purposes. It further appears that the fees in question were by all of the county treasurers placed in the general fund of Cochise County and commingled therewith, and that at the time Gordner took over the duties of county treasurer, and at all times up to the trial of the suit, the balance in the general fund of Cochise County was inadequate to pay outstanding registered warrants on said fund, and that the evidence did not show just how much of the amount in question had been collected after June 14, 1930. The trial court held from these facts, as a conclusion of law, that the statute of limitations had run against the plaintiff as to all of the amount involved collected by the county treasurer up to the date last stated, and that there was no statute authorizing the substitution of Gordner for Kitchel in an action of the nature of the present one, and that he was entitled to be discharged as defendant, and, upon these conclusions of law, rendered judgment against the plaintiff and in favor of the defendant Gordner, he being the only one remaining in the action.

In the previous appeal we held that under the allegations of the complaint the amount in question was a special trust fund held by a trustee of an express

trust, and that since it did not appear the trustee had ever repudiated the trust until within a year of the time the action was commenced, section 2058, *supra,* did not apply, expressly reserving the question as to whether, under any circumstances, any statute of limitations runs against a plaintiff in an action of this nature. Since the evidence upon the trial was sufficient to sustain the trial court in finding that the trustee did repudiate the trust prior to December 31, 1926, section 2058, *supra,* does apply to all funds collected before June 14, 1930, if statutes of limitations apply at all to municipal corporations like the plaintiff in actions of this nature.

■■ The first question before us then is whether our statutes of limitations apply at all in an action by one municipal corporation to collect from another such corporation part of its money raised by taxation and held by the latter corporation without authority of law. There is a great diversity of authority upon this question. The general rule of law, of course, is *nullum tempus occurrit regi,* and, where the sovereign state is prosecuting a suit solely for its own benefit in its official capacity, statutes of limitations do not run against it, unless the legislative authority has specially and specifically provided that they do. 37 C. J. 711, and cases cited. When, however, the action is not brought by nor for the benefit of the state itself, but by and for the benefit of one of its municipal corporations, the authorities are in hopeless conflict. It is quite generally held that so far as contracts of such corporations or mere private rights pertaining to them are concerned, they, like private citizens, may plead or have pleaded against them the appropriate statute of limitations. *City of Alton* v. *Illinois Transp. Co.,* 12 Ill. 38, 52 Am. Dec. 479; *Chicago* v. *Dunham Towing Co.,* 246 Ill. 29, 92 N. E. 566, 32 L. R. A. (N. S.) 245, 20 Ann. Cas. 426. But when the

action is one involving public rights pertaining to the people of the state in general, and not solely to the private rights of a particular municipal corporation, we find no such harmony. It would be of no particular value to cite and review all of the cases in which this matter has been discussed. We think it sufficient to consider a very few of the leading ones and their reasoning. Typical of the one view is the case of *Brown* v. *Board of Education*, 148 Okl. 97, 298 Pac. 249, 253. Therein the board of education of the City of Duncan brought suit against the county treasurer to recover certain money which it was alleged had been received by the county and which, by general state law, it was the duty of the county to pay over to the board. The court recognized the great diversity of decisions in regard to this point, and, after citing many of them, said:

"Clearly, if the defendant were an individual, the statute of limitations could be successfully invoked as a defense against claims arising more than three years prior to the institution of the suit. We fail to discover any reason or logic why the same application of the statute of limitations cannot be invoked in this case. In our judgment, it is more necessary that the statute of limitations be applied in an action against a county than in case of an individual, for the reason that the affairs of a county are administered through its officers whose tenure of office is ever uncertain, and where records during a long period of time may become lost, destroyed or misplaced, and evidence of transactions are often difficult to secure.

"Moreover, budgets and estimates of the county government are based upon assets and liabilities. Taxes are levied and collected upon the basis of assets and liabilities, and, under the policy of our state, the county operates theoretically on a cash basis; therefore, if counties cannot invoke the statute of limitations in actions against them involving purely fiscal claims, it will produce an intolerable financial burden

upon the counties of the state, which will finally pass to the shoulders of the taxpayers.

"Long-delayed actions against counties for money had and received will result in large judgments that must be paid within three years, or the issuance of funding bonds bearing interest for a long term of years in order to absorb said indebtedness. In many cases the municipalities that procure these judgments will, on account of attorney's fees and other costs, not receive more than 50 per cent. of the judgment collected. Thus, while passing the additional burden to the county, the taxpayers must respond to the cost of the transition. The result of such delay is confusion, added litigation, and increased taxes; therefore public policy demands that all suits to recover money judgments against the counties must be brought within three years, as provided by subdivision 2 of section 185, *supra*, [C. O. S. 1921, 12 Okl. St. Ann. § 95, subd. 2], and we therefore hold that the statute of limitations is applicable herein to all claims of the plaintiff arising more than three years prior to the institution of said action."

Typical of the cases holding to the contrary is that of *Wasteney* v. *Schott*, 58 Ohio St. 410, 51 N. E. 34, 35. In that case suit was brought by the treasurer of Hamilton county to collect certain taxes which were overdue, and the defendants pleaded the statute of limitations. The court said as follows:

"Revenues are essential to the maintenance of the state, and the execution of its governmental functions. Taxation is a recognized, constitutional, and lawful means of raising such revenues, for most, if not all, public needs; and the courts will take notice that general taxes levied by the state directly, or through local agencies to which it has delegated that power, constitute a source of revenue for use in the due performance of the functions of the state government. Whether voluntarily paid, or collected by suit, they go partly to the general funds of the state, for its disbursement in the administration of public affairs, and are in part disbursed, in the due course of local

administration, by officers exercising the delegated powers of the state, deemed necessary and proper for that purpose. In the latter case, as well as the former, the fund belongs to the state's revenues, and the disbursement is for the public benefit, although local advantages may also result. Through county, township, municipal, and other organizations, they are paid out in the administration of public justice, the maintenance of the public order and security, the support of the public schools, and other purposes of a public nature pertaining to the state government.''

And it was held the statute was inapplicable. The same rule was applied in the case of *Logan County Supervisors* v. *City of Lincoln,* 81 Ill. 156, in the following language:

''A few points, however, have been made in this case that are not answered by the reasoning in the former decisions. One is the question that arises on the plea of the Statute of Limitations. Our understanding of the law is, that, as respects all public rights, or as respects property held for public use, upon trusts, municipal corporations are not within the operation of the Statute of Limitations, but in regard to contracts or mere private rights, the rule is different, and such corporations, like private citizens, may plead or have pleaded against them the Statute of Limitations. *City of Alton* v. *Illinois Transportation Co.,* 12 Ill. 38, [52 Am. Dec. 479]; Dillon on Mun. Cor. 2 Vol. sections 532, 533.

''The funds involved in this controversy are in the nature of trust funds, held by the county for a specific object, defined by a public law, and hence the Statute of Limitations is not available as a defense to the action. The obligation created by the statute bears no analogy to a right springing out of a contract on the part of the county in favor of the city.''

In *Hagerman* v. *Territory,* 11 N. M. 156, 66 Pac. 526, the court said:

''It is further insisted by the appellant that the general principle that the ordinary statute of limita-

tions cannot be interposed to defeat a claim of the government has no application to the case at bar, as the government (i. e., the territory of New Mexico) has no interest in the taxes delinquent July 1, 1895, here involved; the legislature having provided (section 21, c. 60, Sess. Laws 1897; section 4184, Comp Laws N. M. 1897) that 'all delinquent taxes due the territory on the first day of July, 1895, are hereby declared to be the property of the respective counties in which the same are assessed, and when collected, shall be paid to the general county fund of the several counties of the territory.' We think, however, that the principle has application to this case. Under our system of government a county is a civil subdivision of the territory, and exists as a municipal corporation merely for the purpose of carrying on the territorial government; and it is well settled that the plea of the statute of limitations is no defense to those actions by such corporation involving public rights, such as taxation, unless the statute expressly so provides. [Citing cases].''

We think that the rule laid down in the cases last cited is, as a matter of public policy, the better one. Public revenue raised by taxation is the very lifeblood of government, without which it cannot exist, and the maintenance of orderly and adequate public government by the various municipalities of the state is just as much to the interest of the state itself as a unit as it is to the particular citizens of the municipality involved. We, therefore, hold that, when the question involved in an action is the collection or recovery of revenues, which, by general law, belong either to the state directly or to any of its municipal corporations created by and acting under its authority, that the statute of limitations may not be pleaded in defense against such an action, unless the legislature has expressly permitted such a plea. This, of course, it has not done in Arizona. The trial court,

therefore, erred in sustaining the plea of the statute of limitations interposed by defendant Gordner.

The next question involved is whether or not Gordner was a proper party to the action. Counsel for appellant cite in support of their position that he was in the case of *Thompson* v. *United States ex rel. Cambria Iron Co.,* 103 U. S. 480, 26 L. Ed. 521, and in their brief give an extended quotation purporting to come from that case. While the case does support the rule contended for, after a careful perusal thereof we are unable to find anything resembling the quotation referred to, and presume counsel have inadvertently confused the Thompson case with some other unnamed one. We think the rule of law applicable to this situation is that stated by this court in the case of *Utter* v. *Franklin,* 7 Ariz. 300, 64 Pac. 427, 428, in the following language:

"Upon the first point raised we deem it sufficient to say that the weight of authority in the state courts is in favor of the view that the writ of *mandamus* operates on the office, rather than on the individual who occupies the office, and therefore does not abate by a change of personnel in the office, and that no revivor is necessary against a successor of the officer against whom the proceedings were instituted."

The obligation in the present case is in reality against the county of Cochise, although in form against its treasurer, and the office involved is a continuing one. Under such circumstances, it is only reasonable and logical that the successor in office of an original party defendant may be made a party to the action whenever it becomes necessary. Gordner was properly made a party to the proceeding.

The last question necessary for us to consider is the effect of the fact that the general fund of Cochise County at all times since the bringing of this action has been encumbered by such a number of outstanding

warrants that if these were paid in the order of their registration, as required by law, there would be no cash remaining in the general fund to meet any other obligations. This court, in the case of *Calhoun* v. *Maricopa County Dist. No. 1,* 37 Ariz. 506, 295 Pac. 785, 787, quoted approvingly from the case of *State* v. *McNamer,* 62 Mont. 490, 205 Pac. 951, as follows:

" 'The above also disposes of the point made by defendant that *mandamus* will not lie in the case at bar for the reason that the county treasurer, if required to pay the sum due the city, would have to take the money that was already appropriated to other funds.

" 'While we are fully aware of the rule that *mandamus* will not lie to compel the doing of something unauthorized by law or impossible of performance, yet in the instant case such a rule is inapplicable. In contemplation of the law the city's money is still in the county treasury, and the fact that the money has been diverted by the arbitrary act of the county treasurer into some other fund or funds does not excuse the treasurer from the duty of paying the same over to the city."

And we again quoted that language in the first appeal of this case. An analogous situation arose in the case of *Pinal County* v. *Hammons,* 30 Ariz. 36, 243 Pac. 919, and we held that, where a bank received money as a trust fund, the title thereto never passed to the bank, and that, if it mingled the county receipts with its other funds, such receipts were a claim against the assets of the bank prior to those of its general creditors.

Applying that rule in the present case, if the various treasurers of Cochise County have commingled the special trust fund with the general funds of the county, the acting treasurer of Cochise County must pay such claim from the funds of the county as a preferred claim to those of its general creditors represented by registered warrants, whenever there is any cash re-

ceived by the general fund of the county. The trial court, on the record, should have rendered judgment in favor of the plaintiff for the sum of $2,928.42.

The case is reversed, and remanded to the superior court of Cochise county, with instructions to render judgment in favor of City of Bisbee in accordance with the views expressed herein.

McALISTER, C. J., and ROSS, J., concur.