BERCH,
concurring in part and dissenting in part.
¶ 45 I agree with my colleagues regarding the continued validity of the fifty-five dismissed claims filed before the effective date of A.R.S. § 9-462.02(C), see Op. ¶¶ 14-20, but disagree regarding the treatment of the second group of claims, those filed on July 17, 2001. The majority applies A.R.S. § 12-505(C) to the latter group. I would instead follow the path of the trial court and court of appeals and analyze the validity of these claims under § 12-505(B), which requires reference to § 9-462.02(C).
¶ 46 This case turns initially on the interpretation of A.R.S. § 12-505, which specifies the limitations period applicable to cases for which the legislature has changed the limitations period during the life of an unfiled claim. All parties agree, as have the courts, that § A, which discusses actions barred by pre-existing law, does not apply to this case. The debate centers on whether the case is controlled by § 12-505(B) or § 12-505(C).
¶ 47 Section B provides that “[if] an action is not barred by pre-existing law, the time fixed in an amendment of such law shall govern the limitation of the action.” By its terms, it appears to apply in this case because the City’s right to file actions to enforce sign ordinances was “not barred by pre-existing law.” See A.R.S. § 12-510 (providing that the state is not “barred by the limitations of actions prescribed in this chapter”).
¶ 48 The majority, however, relies on § C, which applies if “an amendment of pre-exist-ing law shortens the time of limitation fixed in the pre-existing law.” A.R.S. § 12-505(C) (emphasis added). This is the point on which I part company with the majority. Unlike my colleagues, I agree with the parties and the judges of the trial court and court of appeals that no time within which the City had to file its claims was “fixed in the pre-existing law.”
¶ 49 As the majority opinion correctly notes, “law” may refer to other than statutory law. Op. ¶ 38. Yet when the meaning of a word is unclear, as a guide to its significance, we look at the statute as a whole and examine how the word is used in related provisions of the statute. See People’s Choice TV Corp. v. City of Tucson, 202 Ariz. 401, 403, ¶ 7, 46 P.3d 412, 414 (2002) (interpreting a statute requires construing the statute as a whole); Golder v. Dep’t of Revenue, 123 Ariz. 260, 265, 599 P.2d 216, 221 (1979) (noting that “words of a statute must be construed in conjunction with the full text of the statute”).
¶ 50 All three sections of § 12-505 refer to “pre-existing law,” and in all instances, the legislature plainly meant statutory law. Section A, for example, says that “[a]n action barred by pre-existing law is not revived by amendment of such law enlarging the time in which such action may be commenced.” *546 A.R.S. § 12-505(A). The pre-existing law that would bar the filing of an action is a statute of limitations, not a case.[14] This conclusion is bolstered by the legislature’s use of the word “amendment.” Id.; see also A.R.S. § 1-213 (2002) (requiring that words be construed according to their common meaning); State v. Korzep, 165 Ariz. 490, 493, 799 P.2d 831, 834 (1990) (same). Statutes are amended; cases are affirmed, reversed, overruled, or distinguished.
¶ 51 Section B contains similar language. It provides that “[i]f an action is not barred by pre-existing law, the time fixed in an amendment of such law shall govern the limitation of the action.” A.R.S. § 12-505(B). Here again, the legislature refers to “amendment.” Id. It seems, then, that the legislature relied on the common understanding that the “pre-existing law” that would bar the filing of a case is a statute of limitations, which could be amended.
¶ 52 Such an understanding is consistent with the use of the term in § C. It says that “[i]f an amendment of pre-existing law shortens the time of limitation fixed in the preexisting law so that an action under the preexisting law would be barred when the amendment takes effect, such action may be brought within one year from the time the new law takes effect, and not afterward.” A.R.S. § 12-505(C). Again the section speaks of amendments (presumably by the legislature, because courts do not enact “amendments”) to pre-existing laws (presumably statutes) that shorten the “time of limitation fixed in the pre-existing law.”
¶ 53 When practitioners need to know how long they have to file an action, they look to the statutes of limitations set forth in the state’s revised statutes. Thus to find a “time of limitation fixed in the pre-existing law,” they would look to the statutes of limitations.
¶ 54 But in this case the statutes of limitations do not fix any time within which the City must bring its sign code violation actions. To the contrary, § 12-510 exempts the state from the operation of the statutes of limitations. A.R.S. § 12-510 (2003); see also Maricopa County v. Rodgers, 52 Ariz. 19, 78 P.2d 989 (1938) (holding that statute of limitations does not apply to political subdivisions for claims to recover public money); City of Bisbee v. Cochise County, 50 Ariz. 360, 72 P.2d 439 (1937) (holding city not subject to statute of limitations in action to recover revenue). Therefore, the legislature had not fixed a “time of limitation ... in the pre-existing law” that would have precluded the City from bringing the claims at issue. As a result, the majority’s position that there was a “time fixed in the pre-existing law” within which the City had to file billboard violation claims, or be barred thereafter, Op. ¶ 39, fails to give meaning to “every word” and “phrase” of the statutory provision, as we have been commanded to do, so that none is rendered superfluous or insignificant. See Bilke v. State, 206 Ariz. 462, 464, ¶ 11, 80 P.3d 269, 271 (2003); Hohokam Irrigation & Drainage Dist. v. Ariz. Pub. Serv. Co., 204 Ariz. 394, 398, ¶ 15, 64 P.3d 836, 840 (2003).
¶ 55 Instead, A.R.S. § 12-505(B) applies if an action is not barred, the legislature passes an amendment that purports to shorten the statute of limitations, and the time for filing has not yet run. That is what happened here. Before the limitations period expired on the City’s claims, the legislature passed § 9-462.02(C), which shortened the time of limitations from an infinite amount of time to within two years of discovery of a violation. In such cases, § 12-505(B) requires reference to the amended law, which in this ease is § 9-462.02(C).
¶ 56 As the majority opinion correctly notes, § 9-462.02(C) was not in effect and therefore did not bar the first set of claims filed July 17, 2000. Op. ¶ 14. With respect to the second set of claims filed July 17, 2001, however, the limitations period in § 9-462.02(C) bars any claims that were filed more than two years after they were discovered.
*547 ¶ 57 This is where this case becomes particularly problematic. The City urges that while the language of § 9^62.02(C) requires that claims be filed within two years of the discovery of a violation, the legislative history reveals that the legislature did not intend such a result. The City concedes that the legislature has the power to eliminate the City’s claims, see City of Bisbee, 50 Ariz. at 369, 72 P.2d at 443, but argues that the legislative history of § 9-462.02(C) shows the legislature’s and stakeholders’ clear understanding that the statute would apply prospectively only and that the City would be allowed two years from the effective date of the statute to file its claims. The City urges us to consider the legislative history because the statute is silent on the issue of retroactivity.
¶ 58 The history that exists shows that the language of A.R.S. § 9-462.02(C) was first offered in House Bill 2671 in the 1999 legislative session, the year before it actually passed. H.B. 2671, 44th Leg., 1st Reg. Sess. (Ariz.1999). That bill contained a clause making the bill retroactive. Id. It did not pass. In the 2000 legislative session, virtually the same bill was again offered as H.B. 2559, this time without the retroactivity clause. H.B. 2559, 44th Leg., 2d Reg. Sess. (Ariz.2000). It passed. This legislative history suggests that the legislature did not support the retroactive application of the statute.
¶ 59 Additional evidence indicates that at least some members of the Senate intended H.B. 2559 to apply prospectively only. In the Senate Finance Committee hearing on March 9, 2000, Representative Joe Hart, the bill’s sole sponsor, stated that his bill would not “nullify any existing violations, court actions, or outstanding disputes. This bill does require filing of existing known violations within two years of the effective date of the bill.” Ariz. State Senate Fin. Comm. Hearing on H.B. 2559, 44th Leg., 2d Reg. Sess. (Ariz.2000) (Statement of Rep. Hart).
¶ 60 At the same committee hearing, Wendy Briggs, the lobbyist/attomey for the Arizona Outdoor Advertising Association, testified in support of the bill. She stated, in reference to potential causes of action in Tucson, that the City “would have two years from the effective date of this bill to file those causes of action.” Id. (Statement of Ms. Briggs). With respect to § 12-505(B), the statute on which the lower courts decided this case, Ms. Briggs testified as follows:
There is a statute in Title 12, 12-505(B), which basically says if an action is not barred by preexisting law and the law is going to be amended, the amendment governs the limitation of action if it’s new, which means the effective date, from the effective date of this legislation they would have two years to file on those causes of action.

Id.

¶ 61 At that hearing, Tucson Senator George Cunningham sought to cement Outdoor Advertising’s position that the City would not be prohibited from going forward with its claims against the billboard companies. Minutes of Senate Comm. on Fin., 44th Leg., 2d Reg. Sess., 10 (Mar. 9, 2000). He asked Ms. Briggs if her client would be willing to amend the bill to include a savings clause for any pre-existing violations; she responded that such a clause was unnecessary because of § 12-505(B). Id. She represented that the billboard industry was looking only for prospective relief and business certainty. Id. at 11.
¶ 62 When the senators on the committee voted on H.B. 2559, Senator Ken Bennett explained that his aye vote was premised on his understanding that the section would apply only prospectively. Id. Senator Bennett’s concern that the statute apply only prospectively is also evidenced by a letter he received from the Senate rules attorneys confirming “that HB 2559 would apply prospectively and that a municipality would have two years from the effective date of this hill to cite violations pursuant to this section that were discovered by the municipality before the effective date of this bill.” Letter from Rules Attorney to Sen. Bennett of *548 03/15/00 (emphasis added). Senator Bennett also received a letter from Karl Eller, the Chief Executive Officer of Eller Media Company (the predecessor to Clear Channel Outdoor, Inc.), affirming Eller Media’s understanding that the bill could not be applied retroactively to affect existing litigation. Letter from Mr. Eller to Sen. Bennett of 03/16/00. Mr. Eller confirmed that “Eller Media has no intention to use this legislation retroactively to affect billboard litigation filed by the City of Tucson.” Id. (emphasis added).
¶ 63 The Senate Fact Sheet for H.B. 2559 also suggests that the members of the Senate may have believed that § 9-462.02(C) would apply prospectively and the City would be permitted to file claims for two years after the section’s effective date. Drafted by the Senate staff and supplied to all senators and the public, the fact sheet states that H.B. 2559 differs from the previous year’s bill because it does not contain a retroactivity clause. Ariz. State Senate Fact Sheet for H.B. 2559, 44th Leg., 2d Reg. Sess., 1 (Ariz.2000).
¶ 64 The trial court and court of appeals concluded that they could not consider the legislative history because § 9-462.02(C) is clear on its face. Minute Entry, Oct. 18, 2001, C-20003722, R. 61 at 4 (hereafter “Minute Entry”); City of Tucson v. Clear Channel Outdoor, Inc., 206 Ariz. 335, 339, ¶ 11, 78 P.3d 1056, 1060 (App.2003). While I agree that the statute is clear in several respects, it is opaque on the subject of retroactivity. Because that is the critical issue before us, I would allow insight into the intent of the legislature on that issue. See Stephen Breyer, On the Uses of Legislative History in Interpreting Statutes, 65 S. Cal. L.Rev. 845, 847 (1992) (defending use of legislative history in interpreting statutes).
¶ 65 The legislative history surrounding the passage of § 9-462.02(C) differs in quality from that disallowed in the cases cited by the trial court. Cases such as Golder, 123 Ariz. at 265, 599 P.2d at 221, and Barlow v. Jones, 37 Ariz. 396, 399, 294 P. 1106, 1107 (1930), which disapproved the practice of allowing mere witnesses before legislative committees or single members of the legislature to testify as to the legislature’s intent, are distinguishable. I agree that such evidence does not necessarily shed light on the intent of the entire body. But Representative Hart was no mere witness before the legislature. He was the sole sponsor of H.B. 2559. He spoke to the committee to explain the purpose of his bill, noting that the only distinction from the bill rejected the previous year was the absence of a retroactivity clause. Representative Hart’s comments were particularly persuasive because the senators had expressed concern about the retroactive applicability of the bill, and he spoke directly on that point to assuage their concerns. He also opined that the City would have two years from the effective date of the statute to file any other known claims. Statement of Rep. Hart, supra ¶ 59.
¶ 66 The trial court relied on Hayes v. Continental Insurance Co., 178 Ariz. 264, 270, 872 P.2d 668, 674 (1994), to conclude that the statements of non-legislators were inadmissible to demonstrate legislative intent. Minute Entry, supra ¶ 64, at 3. The statements at issue in Hayes, however, were described by the court as either “cryptic” or non-responsive to the issue before the court. Hayes, 178 Ariz. at 269, 872 P.2d at 673. In that context, the court cautioned against reliance on non-legislators’ statements “unless the circumstances provide sufficient guarantees that the statements reflect legislators’ views.” Id. at 270, 872 P.2d at 674.
¶ 67 Unlike the cryptic, non-responsive statements in Hayes, the statements offered by the outdoor advertising industry’s lobbyist and those by Mr. Eller in his letter to Senator Bennett directly addressed the senators’ expressed concerns about the precise matter at issue: the bill’s potential retroactive application. Their statements were neither cryptic nor off-topic, but rather served to relieve the senators’ concerns by assuring that the *549 bill would apply prospectively only.[15] Furthermore, the questions by Senator Cunningham and the statement by Senator Bennett in explaining his aye vote demonstrate that the senate committee members were singularly focused on the impact of the bill’s language on the potential and pending actions in the City of Tucson, and thus the non-legislators’ statements do in fact provide sufficient guarantees that the statements may shed light on those senators’ views on the very issue of contention in this case. Thus, the Hayes test is satisfied and Mr. Eller’s letter and Ms. Briggs’ statements should be considered as evidence of the legislative intent regarding the non-retroactivity of H.B. 2559.
¶ 68 The trial court relied on Rio Rico Properties, Inc. v. Santa Cruz County, 172 Ariz. 80, 834 P.2d 166 (1992), to exclude the Senate Fact Sheet. Minute Entry, supra ¶ 64, at 3. The situation in Rio Rico, however, was far different. Rio Rico, 172 Ariz. at 90, 834 P.2d at 176. The court in Rio Rico was concerned about comparing the intent of one legislature with that of another “a number of years earlier.” Id. That is not the ease here. The same legislature (the Forty-fourth) considered and rejected H.B. 2671, which contained a retroactivity clause in 1999, and passed virtually the same bill, without the clause, in 2000. Thus, unlike the situation in Rio Rico, we have before us the same individual legislators, the same lobbyist, and the same proposed language. The concerns confronted by the court in Rio Rico are not present in this case. The nearness in time makes it appropriate for this court to consider the Senate Fact Sheet, which highlighted the difference between H.B. 2671 and H.B. 2559 and indicated the legislative understanding of the bill’s prospective application. Cf. State ex rel. Ariz. Dep’t of Revenue v. Capitol Castings, Inc., 207 Ariz. 445, 449, ¶ 19, 88 P.3d 159, 163 (2004) (citing legislative fact sheets); State v. Thompson, 204 Ariz. 471, 481, ¶ 39, 65 P.3d 420, 430 (2003) (Ryan, J., concurring in part and dissenting in part) (same).
¶ 69 In short, the record reflects an unusually clear understanding that the Senate Finance Committee, and perhaps the Senate as a whole, did not intend § 9-462.02(C) to bar the claims at issue here.
¶ 70 Despite this relatively clear legislative history, the language of § 9-462.02(C) seems unequivocal: “A municipality must issue a citation and file an action involving an outdoor advertising use or structure or sign code violation within two years after discovering the violation.” When the language of a statute is clear, we are to apply it according to its terms because the language is the “best and most rehable index” of the meaning of the statute. N. Valley Emergency Specialists, L.L.C. v. Santana, 208 Ariz. 301, 303, ¶ 9, 93 P.3d 501, 503 (2004); State v. Christian, 205 Ariz. 64, 66, ¶ 6, 66 P.3d 1241, 1243 (2003). Yet we are also exhorted to discern the legislature’s intent, and give effect to it. See People’s Choice TV Corp., 202 Ariz. at 403, ¶ 7, 46 P.3d at 414. But what are we to do when the words and the intent are at odds?
¶ 71 We recently wrestled with this dilemma in North Valley Emergency Specialists v. Santana, 208 Ariz. at 303-04, ¶¶ 9-14, 93 P.3d at 503-04. In that case, we were confronted with a provision of the Arizona Arbitration Act that was clear on its face, yet appeared to conflict with the legislature’s intent. Id. We held that we must interpret the statute according to its plain meaning, unless doing so would lead to “impossible or absurd results.” Id. at 303, ¶ 9, 93 P.3d at 503 (quoting Bilke, 206 Ariz. at 464, ¶ 11, 80 P.3d at 271).
¶ 72 Similarly, in the case now before us, the clear words of the legislature conflict with the legislative — or at least the senatorial — intent. The statute’s terms require that *550 actions to enforce sign code ordinances be filed within two years from the date of discovery. A.R.S. § 9-462.02(C). Applying this provision would bar several of the claims the City filed on July 17, 2001. Yet in 2000, several legislators sought assurances that the amendment would not “reach back” to jeopardize these claims, and assurances were forthcoming from the outdoor advertising industry’s lobbyist, the bill’s sponsor, and the senate rules attorneys that it would not do so.
¶ 73 Despite the legislative history, I would enforce the statute according to its terms, for these reasons: First, as clear as the legislative intent seems to be, it emanates mostly from the Senate, and even then stems largely from the proceedings before one committee. We have no indication as to the intent of members of the House of Representatives, other than Representative Hart. Second, respecting the legislature’s role as the state’s chief policymaker, the court must rely on the truest indicator of the legislature’s intent: the words it chooses to put in the statute. While the legislative history is less than clear because of its incompleteness, the words are as clear and precise as language can be. The statute requires that a “municipality must ... file an action involving ... [a] sign code violation within two years after discovering the violation,” A.R.S. § 9-462.02(C), not within two years of the effective date of the statute.
¶ 74 Thus, despite the legislative history suggesting that the legislature intended for these claims to go forward, I would affirm the result reached by the trial court and court of appeals — that is, I would enforce the clear terms of the legislation and require dismissal of those claims filed on July 17, 2001, that were discovered more than two years earlier.
¶ 75 The result is not unfair to the City. It was aware that H.B. 2559 was under eonsid-eration. It had months to file claims that it had known of for years. Obviously anticipating the statutory interpretation rendered by the trial court and court of appeals, it managed to file 122 claims the day before § 9-462.02(C) became effective. That it might lose some of the thirty-four dismissed claims filed nearly a year after the effective date of § 9-462.02(C) is simply the result of the strict application of the statutory terms.
¶ 76 I have two additional reasons for deciding this case under § B rather than § C. First, interpreting § C as the majority has done produces one result that is counterintuitive, although probably not impossible or absurd. See N. Valley, 208 Ariz. at 303, ¶ 9, 93 P.3d at 503 (cautioning against statutory interpretations that lead to “impossible or absurd results”). Applying § C in a case such as this, where there was no “time fixed in the pre-existing law,” yields the potential of reviving very old claims. That is, applying § C’s one-year grace period gives a municipality one year to salvage claims that were discovered ten or twenty years earlier — or even more — because those old claims would be “barred when the amendment [§ 9-462.02(C) ] takes effect,” having been discovered more than two years before the effective date of § 9-462.02(C). A.R.S. § 12-505(C). Section 12-505(C) would then permit the City to file those claims “within one year from the time the new law takes effect.”[16] Id.
¶ 77 If § B is applied — because the statute has not run on such cases and no time period was “fixed in the pre-existing law” — the City would have only a short time to file previously discovered claims or it would lose them. For example, a claim discovered twenty-two months before the effective date of § 9-462.02(C) would have to be filed within two months, or it would be lost. See A.R.S. § 12-505(B). I can imagine no policy that is fostered by allowing an additional year to file claims discovered thirty-six or forty-eight *551 months before the effective date of the amendment while allowing only two months to file a claim discovered twenty-two months before the effective date. That anomalous result would not occur if § B were applied when there was no prior limitations period “fixed in the pre-existing law,” because the forced application of the amendment, § 9-462.02(C), provides a limitation that would preclude reviving very old claims. Section C could then properly be applied only in situations in which there was an existing limitations period “fixed in the pre-existing law.”[17]
¶ 78 Applying § B when there is no previous statute of limitations, as § 12-505 requires, also has the salutary effect of giving meaning to the phrase “time of limitation fixed in the pre-existing law,” rather than rendering it surplussage. This result seems sensible and serves the public policy of providing business certainty. In effect, the legislature has given the City a firm date within which to file claims, while cutting off the outdoor advertising industry’s exposure in perpetuity to “dangling” or unresolved claims.
¶ 79 The second and final reason for declining to resort initially to § 12-505(C) to govern this case is that neither party argued that legal theory until directed by this court to do so. While we must rule correctly on the law, arguments and theories not raised by the parties generally are deemed waived. See State v. Gortarez, 141 Ariz. 254, 262, 686 P.2d 1224, 1232 (1984). It is not our practice to suggest arguments for the parties.
¶ 80 In the end, I concur in the result regarding the bulk of the claims, those filed on July 17, 2000, but dissent regarding the result as to those filed after the effective date of A.R.S. § 9-462.02(C). As to those claims, I would affirm the opinion of the court of appeals.

. Note, for example, that defenses such as lach-es cannot be raised until a case has been brought. Thus the statute plainly did not intend such common law notions.

. A careful examination of Mr. Eller's letter shows that it should have provided readers little comfort regarding claims not filed before the effective date of § 9-462.02(C). Mr. Eller’s letter appears to' state only that cases filed by the effective date of § 9-462.02(C) would not be affected by the amendment. The letter does not state, as the City implies, that Eller agreed that the City could file claims for two years after § 9-462.02(C) became effective.

. Although we do not know whether such old claims were filed, the possibility demonstrates the inappropriateness of applying § C in the absence of a "time of limitation fixed in the preexisting law.” Proper application of § 12-505(B) in such cases would prevent the filing of such stale claims.

. Appropriately applying § 12-505(B) does not, as the majority suggests, deprive § 12-505(C) of meaning. See Op. ¶¶ 31, 34. That section alone applies to those cases in which an amendment shortens the "time of limitations fixed in the preexisting law” so as to bar an action that would otherwise have existed.